UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PATRICIA G. LATHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Cause No. 1:13-cv-1637-WTL-TAB |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Patricia Latham requests judicial review of the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Ms. Latham's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court, having reviewed the record and the briefs of the parties, b=now rules as follows.

### I.     PROCEDURAL HISTORY

Patricia Latham protectively filed for SSI and DIB on September 17, 2009, alleging she became disabled on March 1, 2008, primarily due to lupus, depression, and anxiety. Ms. Latham's application was denied initially and again upon reconsideration. Following the denial upon reconsideration, Ms. Latham requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A hearing, at which Ms. Latham was represented by counsel, was held before ALJ John D. McNamee-Alemany on April 13, 2011. The ALJ issued a favorable decision on Ms. Latham's claim on April 19, 2011. The Appeals Council set aside the favorable hearing

decision on June 17, 2011, and sent Ms. Latham's case back to a different ALJ for more action and a new decision. A second hearing, at which Ms. Latham was represented by counsel, was held before ALJ Mark C. Ziercher on July 13, 2012. The ALJ denied Ms. Latham's claim on August 3, 2012. After the Appeals Council denied review of the ALJ's decision, Ms. Latham filed this timely appeal.

## II. EVIDENCE OF RECORD

The evidence of record is aptly set forth in Ms. Latham's brief. Specific facts are set forth in the discussion section below where relevant.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity ("SGA") she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. §

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## IV. THE ALJ'S DECISION

The ALJ determined at step one that Ms. Latham had not engaged in substantial gainful activity since March 1, 2008, the alleged onset date. At steps two and three, the ALJ concluded that Ms. Latham has the severe impairments of "chronic obstructive pulmonary disease, cervical

and lumbar degenerative disc disease, major depressive disorder, and posttraumatic stress disorder," Tr. 12, but that her impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ determined that Ms. Latham had the RFC to perform work at the light exertional level with the following restrictions:

> She can stand and/or walk for up to 30 minutes uninterrupted for up to a total of 6 hours in an 8-hour workday, and can sit for 30 minutes uninterrupted for up to a total of 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl. Regarding the neck, she can perform flexion, extension, and rotation frequently. She can frequently reach in all directions bilaterally. She can have frequent exposure to extreme cold, extreme heat, and humidity . . . . Regarding respiratory irritants (e.g., fumes, noxious odors, dusts, mists, gases, and poor ventilation), she can work in situations up to but excluding concentrated exposure . . . . She can understand, remember, and perform simple work tasks at GED Reasoning Level 02 . . . . She can have frequent contact with the general public. She can perform work that requires no more than frequent travel to different work sites. She can perform productive work tasks for up to an average of 96 to 100% of an 8-hour workday, not including the typical morning, lunch, and afternoon breaks.

*Id*. at 16-17. Given that RFC, the ALJ determined that she could not perform any of her past relevant work. Finally, at step five the ALJ determined that Ms. Latham could perform a range of light work that exists in the national economy, including airline security work, work as an apparel rental clerk, and office helper work. Accordingly, the ALJ concluded that Ms. Latham was not disabled as defined by the Act from March 1, 2008, through the date of his decision.

## V. DISCUSSION

In her brief in support of her complaint, Ms. Latham argues that the ALJ: 1) erred in his treatment of her fibromyalgia; 2) failed to obtain testimony from a rheumatologist regarding whether her combined impairments medically equaled a listed impairment; 3) made an erroneous credibility determination; and 4) erred at Step Five. Her arguments are addressed, in turn, below.

4

## A. Ms. Latham's Fibromyalgia

Ms. Latham's first argument is that the ALJ erred in his consideration of her fibromyalgia. The ALJ determined that Ms. Latham was not disabled due to fibromyalgia because of "the poorly developed medical evidence of record and lack of clear diagnosis." Tr. 13. The Court agrees with Ms. Latham that the ALJ erred by finding a "lack of clear diagnosis of fibromyalgia." Tr. 13. Ms. Latham was consistently diagnosed with fibromyalgia by her rheumatologist, Dr. Moenning (Ex. 18F), from at least November 8, 2010 to January 30, 2012.[2] Furthermore, the ALJ even recognized that "'multiple tender points' on examination were noted," Tr. 13, a symptom the Seventh Circuit has recognized as "principal" to fibromyalgia. *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) ("The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—*multiple tender spots*") (emphasis added). The Court acknowledges, however, that a fibromyalgia diagnosis alone is insufficient. *Estok v. Apfel*, 152 F.3d 636, 639 (7th Cir. 1998) (observing that a fibromyalgia diagnosis alone is insufficient to prove a disability). Ms. Latham's fibromyalgia also must be severe.

In this case, the ALJ erred in his assessment of the severity of her fibromyalgia because he relied too heavily on the objective evidence in his fibromyalgia severity assessment and did not ascribe sufficient weight to the opinion of Ms. Latham's treating physician. In determining that her fibromyalgia was not severe, the ALJ considered limitations of motion and strength in his disability determination (i.e., objective evidence). Tr. 12-13 (e.g., "good range of motion in all tested joints" and "her strength was five out of five in all extremeties"). Seventh Circuit

---

[2] Contrary to Ms. Latham's assertion, *see* Pl.'s Br. at 10, Dr. Kannappan's employability assessment is irrelevant here, as his assessment did not consider fibromyalgia, the only impairment raised by Ms. Latham to this Court.

5

precedent, however, states that fibromyalgia's "symptoms are entirely subjective." *Sarchet*, 78 F.3d at 306. Thus, evidence of Ms. Latham's strength and movement were likely not the most pertinent pieces of evidence to be considered. *See also id.* at 307 (since strength and mobility are not "symptom[s] of fibromyalgia, [their] absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced.").

The ALJ also erroneously ascribed "little weight" (Tr. 23) to the March 2011 opinion of Ms. Latham's treating physician, Dr. Guise (Ex. 13F), who opined that Ms. Latham was only capable of sedentary work due, in part, to her fibromyalgia. Under the "treating physician rule," the medical opinion of a treating physician is entitled to "controlling weight" if, in part, it is not inconsistent with the other substantial evidence. *See Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (the "treating physician" rule "directs the [ALJ] to give controlling weight to the medical opinion of a treating physician if it is 'well-supported' by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence.'") (citations omitted). The ALJ reasoned that Dr. Guise's "treatment notes (Ex. 13F; Ex. 19F) do not support the limitations he opines," because they did not indicate any "decreased strength" and failed to state that lying down was part of the treatment plan. Tr. 23. As previously stated, however, fibromyalgia's "symptoms are entirely subjective." *Sarchet*, 78 F.3d at 306. Moreover, Dr. Guise's opinion that Ms. Latham needs to lie down frequently is not inconsistent with her medical history (i.e., other substantial evidence), which makes repeated mention of her fatigue. *See, e.g.*, Ex. 18F. Erroneously, the ALJ simply seems to "blithely reject [the] treating physician's opinion." *Micus v. Bowen*, 979 F.2d 602, 609 (7th Cir. 1992).

Admittedly, most claimants do not have such a severe case of fibromyalgia that they are totally disabled from working. *See Sarchet*, 78 F.3d at 307. However, such a finding must be legally supported and based on substantial evidence such that "an accurate and logical bridge" can be built "from the evidence to [the] conclusion." *Dixon*, 270 F.3d at 1176. The ALJ failed to do so here, and a remand is warranted for proceedings consistent with this opinion. On remand, the ALJ should more carefully determine if Ms. Latham's fibromyalgia is a severe impairment, giving proper weight to her treating physicians and her subjective complaints.

### B. Obtaining Testimony from a Rheumatologist

Turning now to the ALJ's failure to summon a rheumatologist to testify as to medical equivalency, the Seventh Circuit has noted that the ALJ need not summon a medical expert to testify at the hearing if a medical expert has signed the Disability Determination and Transmittal forms ("the Forms") that address medical equivalency. *See Farrell v. Sullivan,* 878 F.2d 985, 990 (7th Cir. 1989) (noting that the requirements were satisfied with regard to medical equivalency because two physicians signed the Forms and substantial evidence in the record supported the ALJ's determination that the claimant did not medically equal a listing); *see also Scheck*, 357 F.3d at 700 ("These forms conclusively establish that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. The ALJ may properly rely upon the opinion of these medical experts.") (internal citations and quotation marks omitted). In this case, both Drs. Sands and Ruiz completed the Forms and concluded that Ms. Latham did not meet or medically equal a Listing.

Nevertheless, Ms. Latham argues that the ALJ could not reasonably rely on the Forms because they are dated January 13, 2010, and March 18, 2010, respectively; therefore, the

7

doctors did not have the benefit of reviewing the entire record when they made their determinations. Specifically, she directs the Court to the rheumatological evaluations and treatment evidence between November 8, 2010 and June 13, 2011. Ex. 18F. These rheumatological evaluations are the first affirmative diagnoses of fibromyalgia in the record. The Court agrees that such findings could have caused the State Agency doctors to find that she medically equaled a medical listing. On remand, the ALJ should seek an updated opinion and/or consult a medical expert with regard to Ms. Latham's fibromyalgia.

### C. The ALJ's Credibility Determination

Ms. Latham next argues that the ALJ's credibility determination is erroneous because it is contrary to Social Security Ruling ("SSR") 96-7p. The Court does not agree. In determining Ms. Latham's credibility, the ALJ concluded:

> the undersigned finds that the claimant is partially credible. Although the claimant has described activities that are fairly limited, two factors weight against considering these allegations to be strong evidence in favor of finding the claimant's functioning to be severely limited. First, allegedly limited cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the medical evidence and *other factors* discussed in this decision.

Tr. 21 (emphasis added). SSR 96-7p specifically cautions that "the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence."

Here, in addition to the objective medical evidence he cited at length, Tr. 16-24, the ALJ also noted the "other factors" in SSR 96-7p, discussing, for example, Ms. Latham's daily activities, the type, dosage, effectiveness, and side effects of her medications, and her past

8

treatment. *See* Tr. 18-21. He specifically noted which statements he did not find credible, noting that, for example, while Ms. Latham alleges problems with standing, walking, lifting, carrying, and pushing, her various physical examinations reveal little, if any, abnormalities to support such allegations. He also noted that Ms. Latham alleges that her pain is severe, yet she has failed to go to physical therapy or engage in an exercise program despite being told to do so. In all, the Court is satisfied with the reasoning of the ALJ's credibility determination. However, if on remand the ALJ's credibility assessment changes in light of the previous instructions, the ALJ is instructed to revise his credibility determination accordingly.

### D. The ALJ's Step Five Determination

Finally, Ms. Latham argues that the ALJ's hypothetical question to the vocational expert ("VE") failed to account for her deficiencies in social functioning and concentration, persistence, and pace and failed to account for her chronic fibromyalgia pain. The Court disagrees. In reviewing the hypothetical given to the VE, it is clear that the ALJ included Ms. Latham's restrictions in social functioning, concentration, persistence, and pace and her chronic fibromyalgia pain:

> *Due to moderate limitations in concentration, persistence and pace*, the hypothetical person can understand, remember, and perform simple work tasks with a GED reasoning level two . . . . *She can have frequent contact with the general public.* She can perform work that requires no more than frequent travel to different work sites and, *due to the distraction of pain*, she can perform productive work tasks for up to an average of 98 to 100 percent of an eight hour workday, not including the typical morning, lunch, and afternoon breaks.

Tr. of Oral Hearing (07/13/2012) at 88-89 (emphasis added). Thus, the ALJ *explicitly* included Ms. Latham's limitations in the hypothetical given to the VE. The ALJ's hypothetical was entirely consistent with his RFC finding, and accordingly, the Court finds no reversible error. Of

9

course, if on remand, Ms. Latham's RFC is affected, the ALJ shall revise his hypothetical accordingly and pose the new hypothetical to a VE.

## VI. CONCLUSION

As set forth above, the ALJ in this case erred in his consideration of her fibromyalgia and in failing to seek the opinion of State Agency doctors after the record had been sufficiently developed. The decision of the Commissioner is therefore **REVERSED AND REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 10/09/14

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication